UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DIXIE A. VOORHEES, )<br>      Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, Acting Commissioner )<br>of the Social Security Administration, )<br>      Defendant. ) | CAUSE NO.: 3:14-CV-128-JEM |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Dixie A. Voorhees on January 23, 2014, and a Brief Plaintiffs Brief in Support of Her Motion to Reverse the Decision of the Commissioner of Social Security (sic) [DE 19], filed by Plaintiff on July 18, 2014. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On October 28, 2014, the Commissioner filed a response, and on November 18, 2014, Plaintiff filed a reply. For the following reasons, the Court grants Plaintiff's request for remand.

**PROCEDURAL BACKGROUND**

On September 30, 2010, Plaintiff filed an application for disability insurance benefits ("DIB") with the U.S. Social Security Administration ("SSA") alleging that she became disabled on March 11, 2008. Plaintiff's application was denied initially and upon reconsideration. On June 11, 2012, Administrative Law Judge ("ALJ") Jonathan Stanley held a hearing at which Plaintiff, with an attorney, and a vocational expert ("VE") testified. On June 19, 2012, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1. The claimant last met the insured status requirements of the Social Security Act on June 30, 2011.

2. The claimant has not engaged in substantial gainful activity during the period from her alleged onset date of March 11, 2008, through her date last insured of June 30, 2011. (20 CFR 404.71 *et seq.*).

3. Through the date last insured, the claimant had severe impairments: obesity; mild degenerative disc disease of the cervical and lumbar spine ("DDD"), and fibromyalgia (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equalled any of the listed impairments in 20 CFR 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. Through the date last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to no more than occasional climbing of stairs and ramps, balancing, stooping, kneeling, crouching, or crawling, and no climbing of ropes, ladders, or scaffolds.

6. Through the date last insured, the claimant was able to perform past relevant work as a filler remanufacturing toner. (20 CFR 404.1565).

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from March 11, 2008, through June 30, 2011, the date last insured (20 CFR 404.1520(f)).

On July 18, 2013, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

# FACTS

Plaintiff was diagnosed with fibromyalgia, hypertension, hyperlipidemia, gastroesophageal reflux disease (GERD), major depressive disorder, and mild degenerative disc disease of the cervical and lumbar spine.

Plaintiff was seen by her physician, Dr. Hough, about every three months from 2009 on. He treated her for fibromyalgia, hypertension, hyperlipidemia, back pain, and severe depression. On June 14, 2011, he completed a Medical Source Statement, identifying limitations on Plaintiff's work-related activities. The form indicated that Plaintiff could only rarely lift ten pounds, twist, stoop, crouch, or climb stairs, and had limitations with reaching, handling, or fingering. Dr. Hough noted that Plaintiff would be off task about 25% of the day and could only tolerate low stress work, and would have to miss more than four days per month because of her impairments or treatment. He opined that Plaintiff would be limited to sitting for less than two hours and standing and/or walking for less than two hours in a workday; would require a job that permitted her to sit and stand at will; and would need hourly unscheduled breaks.

On November 22, 2010, state agency psychologist Dr. Link performed a psychological assessment and opined that Plaintiff was moderately impaired in her ability to perform work-related activities due to her anxiety and depression, and that she was incapable of managing her own funds.

On December 1, 2010, Dr. Shoucair performed a physical examination for the agency and diagnosed Plaintiff with neck pain, low back pain, fibromyalgia, hypertension, and GERD. He opined that Plaintiff was able to sit, stand, walk, handle objects, hear, see, and speak.

On December 29, 2010, non-examining state agency physician Dr. Ruiz opined that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently, could sit and stand or walk for six hours each over the course of a workday, and could occasionally climb ramps, stairs, ladders, ropes, and scaffolds, balance stoop, kneel, crouch, and crawl. Dr. Corcoran affirmed the opinion in April 2011.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v.*

4

*Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42

5

U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's RFC, age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (citing SSR

96-8p, 1996 WL 374184 (July 2, 1996); 20 C.F.R. § 404.1545(a)) (other citations omitted). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

**A.     Residual Functional Capacity**

Plaintiff argues that the ALJ did not properly evaluate the medical and mental health opinions in the record. The Commissioner argues that the ALJ's findings are supported by substantial evidence.

The RFC is an assessment of what work-related activities the claimant can perform despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *see also* 20 C.F.R. §§ 404.1545(a)(1); 416.1545(a)(1). In evaluating a claimant's RFC, an ALJ is expected to take into consideration all of the relevant evidence, including both medical and non-medical evidence. *See* 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3). According to SSA regulations:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

7

SSR 96-8p at *7. Although an ALJ is not required to discuss every piece of evidence, he must consider all of the evidence that is relevant to the disability determination and provide enough analysis in his decision to permit meaningful judicial review. *Clifford*, 227 F.3d at 870; *Young*, 362 F.3d at 1002. In other words, the ALJ must build an "accurate and logical bridge from the evidence to his conclusion." *Scott*, 297 F.3d at 595 (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)).

The Court is particularly concerned with the ALJ's treatment of Plaintiff's fibromyalgia. At step three of his analysis, the ALJ concluded that Plaintiff had fibromyalgia that was severe, but not severe enough to meet or medically equal a listed impairment. AR 18. However, when describing the weight given to medical sources, the ALJ discounts the opinions of all the physicians who diagnosed her fibromyalgia or discussed the limitations it causes her and states that Plaintiff's "allegations [of fibromyalgia] are not accepted as alleged because they are not consistent with the objective medical evidence available in this decision maker." AR 20. The ALJ does not include reference to any medical professionals who concluded that Plaintiff is not suffering from fibromyalgia, or even any medical professionals who questioned the diagnosis.

Not only is the ALJ's discounting of Plaintiff's fibromyalgia inconsistent with his earlier conclusion that Plaintiff does suffer from severe fibromyalgia, it also appears that the ALJ is substituting his own medical determination for that of the physicians who actually treated Plaintiff. He discounted Dr. Hough's diagnosis of fibromyalgia because the doctor's notes did not include a clinical examination the ALJ expected to see (one that is apparently based on an outdated understanding of diagnostic techniques) and the doctor's notes contain "no specific notation as to the sign or symptoms with which the fibromyalgia diagnosis was made." AR 22.

The Seventh Circuit has repeatedly held that ALJs are not to make their own independent medical findings. *See, e.g., Myles v. Astrue*, 582 F.3d 672, 677-78 (7th Cir. 2009); *Blakes v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). Judges have been warned not to "succumb to the temptation to play doctor" because "lay intuitions about medical phenomena are often wrong." *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) (citing cases).

This same substituting of his own judgment for that of medical professionals is apparent in the ALJ's determination of Plaintiff's physical capacity. Three physicians opined as to Plaintiff's RFC: Dr. Ruiz and Dr. Corcoran, two non-examining state agency doctors, and Dr. Hough, Plaintiff's treating physician. None of them opined that Plaintiff was capable of work at the very heavy exertional level, but the ALJ concluded that there were no restrictions on Plaintiff's ability to do work at all exertional levels. The ALJ did give some explanation for his discounting of the three RFC opinions, giving little weight to treating physician Dr. Hough as described above and discounting the assessments of Dr. Ruiz and Dr. Corcoran because "the record as a whole fails to support any limitation as to the claimant's exertional level." AR 23. He cited to Dr. Shoucair's consultative examination in support of this contention, but Dr. Shoucair did not specifically address Plaintiff's exertional limitations, and his reliance on Dr. Shoucair in this context is inconsistent with his earlier discounting of Dr. Shoucair's report and with the fact that medical professionals Ruiz and Corcoran took Dr. Shoucair's assessment into account when determining Plaintiff's exertional capacity.

The ALJ substituted his own judgment for that of the multiple medical opinions in the record, both as to Plaintiff's diagnoses and her physical abilities. Although medical evidence

9

"may be discounted if it is internally inconsistent or inconsistent with other evidence," *Knight*, 55 F.3d at 314 (citing 20 C.F.R. § 404.1527(c)) (other citations omitted), the ALJ "must provide a 'logical bridge' between the evidence and his conclusions." *O'Connor-Spinner*, 627 F.3d at 618. In this case, the ALJ concluded that Plaintiff suffered from the severe impairment of fibromyalgia, but then discounted the opinion of any medical professional who addressed the fibromyalgia, and he substituted his own opinion, unsupported by any medical professional, that Plaintiff suffers from absolutely no exertional limitations.

Similar problems are in evidence in the ALJ's analysis of Plaintiff's depression. The ALJ gave great weight to the assessment of the state agency psychiatric consultants, who opined that Plaintiff's depressive disorder was "non-severe," and noted Plaintiff's lack of hospitalization and treatment only by a primary care physician instead of a specialist. Plaintiff argues that the ALJ failed to explain the weight given to the opinion of Dr. Link, an examining doctor who opined that Plaintiff was moderately impaired in her work-related activities because of her anxiety and depression and was unable to handle her own funds. The ALJ emphasized the GAF score given by Dr. Link rather than the limitations she expressed, engaging in the kind of "cherry-picking" of mental health evidence the Seventh Circuit Court of Appeals warns against. *See, e.g., Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) ("[A] person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition."). The ALJ did not address the work-related limitations in Dr. Link's opinion. Although ALJs "are not bound by findings made by State agency or other program physicians and psychologists, [] they may not ignore these opinions and must explain

the weight given to the opinions in their decisions." SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996).

Plaintiff also argues that the ALJ also failed to specifically address the portions of treating physician Dr. Hough's report that opined that Plaintiff would be off-task at work for 25% or more of the time because of her mental impairments. Again, an ALJ may not simply ignore an opinion that addresses a plaintiff's ability to work, but must "evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record." SSR 96-5p, 1996 WL 374183, at *3, *5 (July 2, 1996); *see also Roddy*, 705 F.3d at 636 ("Even though the ALJ was not required to give [the treating physician]'s opinion [that the claimant could not handle a full-time job] controlling weight, he was required to provide a sound explanation for his decision to reject it."). Although the ALJ gave reasons for disregarding Dr. Hough's fibromyalgia diagnosis, as discussed above, he did not address Dr. Hough's treatment of Plaintiff's depressive disorder or the portions of his Medical Source Statement that dealt with her mental limitations. The ALJ was required to take into account Dr. Link's and Dr. Hough's opinions and give reasons for ignoring them. He failed to do so; a failure that is particularly troubling since their opinions are inconsistent with the ALJ's finding that Plaintiff did not suffer from a severe mental impairment.

Plaintiff also argues that the ALJ failed to explain how he considered the limitations caused by Plaintiff's combination of impairments. "Although [] impairments may not on their own be disabling, that would only justify discounting their severity, not ignoring them altogether. Moreover, . . . an ALJ must consider the combined effects of all of the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580

F.3d 471, 477 (7th Cir. 2009); *see also Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011) ("Even if each problem assessed separately were less serious than the evidence indicates, the combination of them might be disabling."); *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008) ("[A]n ALJ is required to consider the aggregate effects of a claimant's impairments, including impairments that, in isolation, are not severe.") (citing 20 C.F.R. § 404.1523; *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003)).

In particular, Plaintiff argues that the ALJ failed to consider whether Plaintiff's obesity, in combination with her other impairments, caused limitations in Plaintiff's ability to work. "Social Security Ruling 02-1p requires an ALJ to consider the exacerbating effects of a claimant's obesity on her underlying conditions (even if the obesity is not itself a severe impairment) when arriving at a claimant's RFC," *Hernandez v. Astrue*, 277 F. App'x 617, 623-24 (7th Cir. 2008) (citing SSR 02-1p, 2002 WL 34686281 (Sept. 12, 2002)) (other citations omitted), and the Court notes that in this case the ALJ concluded that Plaintiff's obesity *was* a severe impairment, making the determination even more important. *See also Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005) (finding that, even if obesity is not a severe impairment itself and "merely aggravates a disability caused by something else[,] it still must be considered for its incremental effect on the disability"). Ruling 02-1p provides that in evaluating obesity in assessing RFC, "[a]n assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment." SSR 02-1p, at *6. Further, Ruling 02-1p explains that an ALJ's RFC determination must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. *Id.* (citing SSR 96-8p).

On remand, the ALJ is directed to consider the combination of Plaintiff's impairments, even those that are not severe in isolation, and to specifically address the impact her obesity and her mental health problems have on her ability to perform work.

This matter is being remanded for a new RFC. On remand, the ALJ is directed to fully consider each of the Plaintiff's alleged impairments, alone and in combination, and provide a logical bridge from the evidence to his conclusion. He must avoid substituting his own medical judgment for that of the medical professionals in the record and include a thorough description of the medical and mental health evidence on which he bases his determination and an explanation of how he weighed the opinions of Plaintiff's treating and examining healthcare providers.

**B.     Credibility Assessment**

Plaintiff argues that the ALJ improperly evaluated Plaintiff's credibility. The Commissioner argues that the ALJ's opinion is supported by substantial evidence.

The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

> (i) [The claimant's] daily activities;
> (ii) The location, duration, frequency, and intensity of [] pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication . . . ;
> (v) Treatment . . . for relief of [] pain or other symptoms;
> (vi) Any measures . . . used to relieve your pain or other symptoms . . . ; and
> (vii) Other factors concerning [] functional limitations and restrictions due to pain or other symptoms.

13

20 C.F.R. § 404.1529(c)(3). In making a credibility determination, Social Security Ruling 96–7p states that the ALJ must consider the record as a whole, including objective medical evidence, the claimant's statement about symptoms, any statements or other information provided by treating or examining physicians and other persons about the conditions and how they affect the claimant, and any other relevant evidence. *See* SSR 96-7p, 1996 WL 374186 (Jul. 2, 1996).

An ALJ is not required to give full credit to every statement of pain made by the claimant or to find a disability each time a claimant states he or she is unable to work. *See Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996). However, Ruling 96-7p provides that a claimant's statements regarding symptoms or the effect of symptoms on his ability to work "may not be disregarded solely because they are not substantiated by objective evidence." SSR 96-7p at *6. An ALJ's credibility determination is entitled to substantial deference by a reviewing court and will not be overturned unless the claimant can show that the finding is "patently wrong." *Prochaska*, 454 F.3d at 738.

The ALJ found Plaintiff less than credible in part because she did not seek additional treatment, specifically noting that she did not go to the emergency room, consult a specialist, or have surgery. However, Plaintiff argues that the ALJ did not ask Plaintiff about her failure to obtain this additional treatment, despite evidence in the record, such as her lack of insurance, that there might be explanations other than her lack of credibility. The ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide" and "may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual

14

does not seek medical treatment or does not pursue treatment in a consistent manner." SSR 96-7p, at *7; *see also Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) ("Although a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference."); *Craft*, 539 F.3d at 679 ("[T]he ALJ 'must not draw any inferences' about a claimant's condition from this failure [to follow a treatment plan] unless the ALJ has explored the claimant's explanations as to the lack of medical care.") (quoting SSR 96-7p). When the ALJ questioned Plaintiff about her failure to seek additional mental health treatment, she stated that she was unable to afford it (AR 52), but he did not appear to take that into account in his analysis of her depression and did not ask Plaintiff about the gaps in her physical treatment on which he based his conclusion that she was less than credible. *See Craft*, 539 F.3d at 679 ("Here, although the ALJ drew a negative inference as to [the plaintiff]'s credibility from his lack of medical care, she neither questioned him about his lack of treatment or medicine noncompliance during that period, nor did she note that a number of medical records reflected that [the plaintiff] had reported an inability to pay for regular treatment and medicine.").

Plaintiff also argues that the ALJ failed to consider the side effects of Plaintiff's medications, despite her testimony that they made her sleepy and lethargic, in contravention of the requirement that he take these into account. *See* SSR 96-7p,*7 (including "side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" as one of the types of evidence "that the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements") (citing 20 CFR

404.1529(c) and 416.929(c)).  In addition, Plaintiff argues that the ALJ failed to account for observations of agency employees that support her allegations of mental health impairments. An agency employee called Plaintiff and reported, among other things, that Plaintiff had a flat tone and was at times close to tears. AR 196. The ALJ is required to "consider any observations about the individual recorded by Social Security Administration (SSA) employees during interviews, whether in person or by telephone," but this information was not addressed by the ALJ in his analysis.

The ALJ improperly relied on Plaintiff's failure to seek treatment to find her less than credible and failed to address other factors he should have included in his credibility assessment. On remand, the ALJ is directed to fully consider Plaintiff's testimony and the entirety of the record in compliance with the applicable directives.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the relief requested in Brief Plaintiffs Brief in Support of Her Motion to Reverse the Decision of the Commissioner of Social Security (sic) [DE 19] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 12th day of January, 2015.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc:  All counsel of record